UNITED STATES of America,
Plaintiff,

v.

MARYLAND AND VIRGINIA MILK
PRODUCERS ASSOCIATION,
INC., Defendant.

Civ. A. No. 4482-56.

United States District Court
District of Columbia.

Jan. 14, 1959.

Joseph J. Saunders, Edna Lingreen, Joseph E. Waters and A. Duncan Whitaker, Washington, D. C., for plaintiff.

Herbert A. Bergson, William J. Hughes, Jr., Daniel H. Margolis, Daniel J. Freed and Nicholas J. Chase, Washington, D. C., for defendant.

HOLTZOFF, District Judge.

As has been heretofore indicated, the complaint in this civil action brought by the United States against Maryland and Virginia Milk Producers Ass'n, Inc., D.C., 167 F.Supp. 799, under the antitrust laws, is in effect divided into three separate claims for relief or causes of action.

At the first section of the trial, the Court upheld the defense of immunity to the first cause of action, in that the defendant, being an agricultural cooperative, was immune from the antitrust laws unless and except when it entered into transactions with persons or organizations that themselves did not possess such immunity, that is, were not agricultural cooperatives.

The trial then proceeded as to the third cause of action, which was predicated on the Clayton Act, 15 U.S.C.A. § 12 et seq. That section of the trial concluded with a decision in favor of the Government to the effect that the transaction involving the acquisition by the defendant of Embassy Dairy, Inc., was a violation of Section 7 of the Clayton Act, and with a decision in favor of the defendant in respect to similar acquisitions of Richfield and Wakefield Dairies.

The Government then requested that the Court proceed to a decision under the second cause of action, which also attacked the Embassy Dairy transaction, but based the attack on the Sherman Act, 15 U.S.C.A. §§ 1-7, 15 note, instead of on the Clayton Act. It was stipulated that the case, insofar as this cause of action was concerned, would be submitted on the same record as that before the Court at the trial on the first and third causes of action.

■ The Court, therefore, readopts the findings of fact that it has heretofore made. In addition, it is going to make a few additional findings, largely of the nature of supplemental findings based upon the evidentiary findings heretofore made. First, the Court finds as a fact that the result of the transaction complained of was a foreclosure of competition, in respect to Government contracts and in respect to purchases of milk from milk producers. The Court further finds as a fact that the transaction complained of was entered into with the intent and purpose of restraining trade. In the light of the decision of the Supreme Court in United States v. Griffith, 334 U.S. 100, 105, 68 S.Ct. 941, 92 L.Ed. 1236, the Court does not regard it as necessary to find a specific intent to restrain trade in order to reach the conclusion of law that the antitrust laws have been violated. Nevertheless, the Court does make hereby such a finding of fact. The Court further concludes that an unreasonable restraint of trade, violative of the Sherman Act, has resulted from the acquisition of Embassy Dairy by the defendant.

■ It has been urged in behalf of the defendant that the transaction involved in this case is within the immunity accorded to agricultural cooperatives. The basis of this argument is that the doctrine that bans immunity in respect to transactions entered into between agricultural cooperatives and organizations that are not such cooperatives should be limited to such transactions as result in a competitive advantage to the other party, that is, the party which is not clothed with the immunity.

The Court does not find any authoritative basis for such a distinction. The general doctrine limiting the immunity in the manner heretofore stated was formulated and enunciated by the Supreme Court in United States v. Borden Co., 308 U.S. 188, 204, 60 S.Ct. 182, 84 L.Ed. 181. There is nothing in that case intimating that any such limitation as is now suggested should exist. This Court finds no authoritative or binding expression formulating such a qualification.

True, some expressions are cited from a number of District Court cases involving transactions of labor unions, which tend to support the reasoning advanced on behalf of the defendant in this respect. Entirely aside from the fact that those expressions are not binding on this Court, it must be noted that the decisions involving labor union transactions are governed by a somewhat different principle than those that apply to agricultural cooperatives. To be sure, the same provision of law grants an immunity from the antitrust laws to agricultural cooperatives as to labor unions. In addition, however, other statutes, such as the Norris-La Guardia Act, 29 U.S.C.A. § 101 et seq., the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., and the Labor-Management Act, 29 U.S.C.A. § 141 et seq., add certain further privileges to labor unions that are not accorded to agricultural cooperatives. It necessarily follows, therefore, that decisions involving labor unions are not necessarily apposite as to this point when an agricultural cooperative is involved.

In this connection, it is appropriate to call attention to the decisions of the Supreme Court in United States v. Hutcheson, 312 U.S. 219, 61 S.Ct. 463, 85 L.Ed. 788, and in Allen Bradley Co. v. Local Union No. 3, 325 U.S. 797, 806, 65 S.Ct. 1533, 1538, 89 L.Ed. 1939, in which it was held expressly that:

"The Sherman, Clayton and Norris-La Guardia [Acts] must be jointly considered in arriving at a conclusion as to whether labor union activities run counter to the Antitrust legislation."

Naturally, an agricultural cooperative can derive no benefit from the statutes relating to labor unions.

The Court, therefore, reaches the conclusion that the statutory immunity accorded to agricultural cooperatives does not apply to the transaction here involved.

882

In respect to the main issue here presented for decision, it has been held by the Supreme Court that it is unreasonable *per se* to foreclose competitors from any substantial market. International Salt Co. v. United States, 332 U.S. 392, 396, 68 S.Ct. 12, 92 L.Ed. 20; United States v. Griffith, 334 U.S. 100, 107, 68 S.Ct. 941, 92 L.Ed. 1236. In addition, the case of United States v. Yellow Cab Co., 332 U.S. 218, 67 S.Ct. 1560, 91 L. Ed. 2010, generally supports the conclusion that is being reached here.

The Court concludes that the transaction involving the acquisition of Embassy Dairy by the defendant constitutes a violation of Section 3 of the Sherman Act.

This oral opinion will constitute the findings of fact and conclusions of law. Counsel will prepare a judgment in accordance with the ruling and in the form indicated in the opinion rendered in this case on November 21, 1958, 167 F.Supp. 799.